# EXHIBIT 1

August 24, 2017

## NON-DISCLOSURE AGREEMENT

THIS NON-DISCLOSURE AGREEMENT ("**Agreement**") is made and entered into as of [INSERT DATE] (the "**Effective Date**") by and between Innovatus Capital Partners, LLC, a Delaware limited liability company ("**ICP**" or the "**Disclosing Party**") and Jonathan Neuman, individually ("**Neuman**"), Anthony Mitchell, individually ("**Mitchell**") and **Ritz Advisors, LLC, a Delaware Limited Liability** ("**RA**" together with Neuman and Mitchell, the "**Receiving Parties**").

WHEREAS the parties wish to explore a possible business opportunity related to the purchase, and subsequent securitization, of real estate related forward contracts (the "**Business Opportunity**"), which will involve the disclosure of Confidential Information (as defined below) by the Disclosing Party or its representatives to the Receiving Parties.

The parties agree as follows:

I. Confidential Information. For purposes of this Agreement, "**Confidential Information**" means all nonpublic information disclosed by Disclosing Party including, but not limited to, all tangible, intangible, visual, electronic, present or future information such as but not limited to: (a) all intellectual property, including but not limited to patents and patent applications, and trade secrets; (b) financial information or personnel matters relating to products, employees, investors or business; (c) technical information, including research, procedures, processes, specifications, designs, development, data and know-how; (d) historical, current and prospective business information, including, operations, planning, marketing interests, products (including product formulations and test data), and client and distributor lists; (e) the terms of any agreement to which Disclosing Party is a party; (f) discussions, negotiations or proposals related to agreements; and (g) any other item, including but not limited to all writings, illustrations, photographs or other information which Disclosing Party deems to be proprietary or confidential. All Confidential Information shall be subject to the terms of this Agreement whether marked as "Confidential" or not and whether disclosed orally, electronically, in writing or other media.

II. Exclusions. Notwithstanding the foregoing, Confidential Information shall not include any information, however designated, which the Receiving Parties can show in writing (a) is or has become generally available in the public without breach of this Agreement by the Receiving Parties, (b) became known to the Receiving Parties prior to disclosure to the Receiving Parties by the Disclosing Party without breach of any nondisclosure obligations to the Disclosing Party or otherwise in violation of the Disclosing Party's rights, or (c) was received from a third party without breach of any nondisclosure obligations to the Disclosing Party or otherwise in violation of the Disclosing Party's rights.

III. Obligations Regarding Confidential Information. The Receiving Parties (a) shall restrict disclosure of Confidential Information solely to their employees on a need to know basis provided such employees have executed confidentiality agreements reasonably satisfactory to the Company prior to any such disclosure, (b) shall protect the Confidential Information

21597986.1.BUSINESS

with at least the same degree of care and confidentiality as they afford their own confidential information, at all times exercising at least a commercially reasonable degree of care in such protection, and (c) shall not use any Confidential Information in any manner except in furtherance of Receiving Parties' business relationship with Disclosing Party, or as otherwise agreed by the Disclosing Party in writing. Notwithstanding the foregoing, the Receiving Parties may disclose Confidential Information pursuant to an order of a court or governmental agency as so required by such order, provided that the Receiving Parties shall first notify the Disclosing Party of such order and afford the Disclosing Party the opportunity to seek a protective order relating to such disclosure. The Receiving Parties agree to notify the Disclosing Party immediately if any Receiving Party learns of any use or disclosure of any Disclosing Party Confidential Information in violation of the terms of this Agreement.

IV. Term. The term of this Agreement shall commence on the Effective Date and shall terminate three (3) years thereafter.

V. Title and Proprietary Rights. Notwithstanding the disclosure of any Confidential Information by the Disclosing Party to the Receiving Parties, the Disclosing Party shall retain title and all intellectual property and proprietary rights thereto, and the Receiving Parties will have no rights, by license or otherwise, to use the Confidential Information except as expressly provided herein. The Receiving Parties shall not alter or obliterate any trademark, trademark notice, copyright notice, confidentiality notice or any notice of any other proprietary right of the Disclosing Party on any copy of Confidential Information, and shall reproduce any such mark or notice on all copies of such Confidential Information.

VI. Return of Confidential Information. The Receiving Parties shall promptly return all tangible material embodying Confidential Information (in any form and including, without limitation, all summaries, copies and excerpts of Confidential Information) upon the earlier of (a) the expiration of this Agreement, (b) the written termination of the dealings between the Disclosing Party and the Receiving Parties, and (c) the Disclosing Party's written request. Notwithstanding the foregoing, the Receiving Parties may retain such copies of the Confidential Information as required pursuant to applicable law, rule or regulation, or pursuant to internal document retention policies, including automated electronic archiving.

VII. Non-Circumvention. In addition, in connection with the Business Opportunity, the Receiving Parties agree not to circumvent the Disclosing Party and shall not work with any business associates, affiliates, partners, representatives, investors, vendors, clients or other third party unless such approval is specifically granted in written form by the Disclosing Party on a case-by-case basis, which approval may be withheld in the Disclosing Party's sole discretion. The Receiving Parties further agree not to undertake any transaction or a series of transactions of any kind in connection with the Business Opportunity without the express prior written agreement of the Disclosing Party, which agreement may be withheld in the Disclosing Party's sole discretion. This non-circumvention provision shall expire at the end of three (3) years from the termination of this Agreement and this provision, and any other provisions necessary to enforce this provision, shall survive any such termination of this Agreement.

VIII. <u>Injunctive Relief</u>. The parties acknowledge that monetary damages may not be sufficient for unauthorized disclosure by the Receiving Parties of Confidential Information, and that the Disclosing Party shall be entitled, without waiving any other rights or remedies, to seek injunctive or equitable relief as may be deemed proper by a court of proper jurisdiction, without further proof of irreparable harm or the necessity of posting a bond or other undertaking.

IX. <u>Limited Relationship</u>. This Agreement will not create a joint venture, partnership or other formal business relationship or entity of any kind, or an obligation to form any such relationship or entity. Each Party shall bear all costs and expenses incurred by it in the negotiation of and compliance with this Agreement.

X. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its rules regarding conflicts of laws, and each party consents to the jurisdiction of the courts in the State of New York.

XI. <u>General</u>. In the event that one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then to the maximum extent permitted by law, the remaining provisions of this Agreement shall remain in full force and effect. Any waiver, express or implied, by any party of any of its rights arising under this Agreement must be in writing and shall not constitute or be deemed a waiver of any other right hereunder, whether of a similar or dissimilar nature. This Agreement may not be assigned by any of the Receiving Parties without the written consent of the Disclosing Party which may be withheld in its sole discretion; provided, however if such consent is granted, this Agreement shall be binding upon and inure to the benefit of any such successors and assigns.

XII. <u>Entire Agreement; Counterparts</u>. This Agreement, together with that certain term sheet entered into by the Parties contemporaneously with this Agreement (the "**Term Sheet**") the terms of which are hereby incorporated by reference, constitutes the entire agreement between the parties relating to the Business Opportunity, and supersedes all prior discussions between the parties relating thereto. No amendment or modification of this Agreement shall be valid or binding on the parties unless in writing and signed by each party's authorized representative. This Agreement may be executed in two or more counterparts, each of which shall be considered an original, and all of which together shall constitute one and the same instrument. In the event of any conflicting provisions between this Agreement and the Term Sheet, the terms of this Agreement shall prevail.

[SIGNATURE PAGE FOLLOWS]

AGREED as of the Effective Date:

_Joshua L. Little_ (signature)
Innovatus Capital Partners, LLC
By: Joshua L. Little
Title: Managing Director

_Jonathan Neuman_ (signature)
Ritz Advisors, LLC
By: Jonathan Neuman
Title: CEO

_Jonathan Neuman_ (signature)
Jonathan Neuman, individually

_Anthony Mitchell_ (signature)
Anthony Mitchell, individually

## ICP / RA JV
## Summary of Indicative Terms of Investment

*This Summary of Indicative Terms of Investment (the "**Term Sheet**") is intended to form the basis of the agreement between the parties hereto (the "**Parties**") in connection with any subsequently consummated transaction related to the Business Opportunity (as further defined in that certain Non-Disclosure Agreement entered into among the Parties on the date hereof (the "NDA")). This Term Sheet shall not constitute an offer to sell or the solicitation of an offer to buy the securities described herein, nor shall there be any sale of such securities in any jurisdiction in which such offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such jurisdiction. Any commitment by any of the Parties to engage in a transaction shall be contingent upon satisfactory due diligence, corporate approvals and definitive documentation. Capitalized terms not otherwise defined herein shall have the meanings set forth in the NDA.*

| | |
|---|---|
| **Purpose:** | The purpose of this Term Sheet is to set forth the principal terms on which the Parties would commit equity capital to a JV Vehicle (defined below) for the purpose of implementing the Business Opportunity. |
| **JV Vehicle:** | The Parties would establish a vehicle, or other structure to optimize tax, regulatory and operational efficiencies with the same economic equivalent (the "**JV Vehicle**"), which would provide for: (i) equity ownership of 50% by ICP and its affiliates and (ii) equity ownership of 50% by the Receiving Parties and their controlled affiliates. |
| **Commitments:** | ICP, on the one hand, and the Receiving Parties, on the other hand, would each commit an equal amount of capital to the JV Vehicle in an amount to be agreed upon between the Parties. |
| **Exclusive Brokerage:** | RA, or a designee of the Receiving Parties, shall be the exclusive real estate brokerage firm utilized in connection with the Business Opportunity. |
| **Distributor:** | An affiliate of ICP, or a designee of ICP, shall be the exclusive distributor of the securities issued in connection with the securitization of the contracts contemplated by the Business Opportunity. |
| **Expenses:** | Each Party shall bear all costs and expenses incurred by it in the negotiation of and compliance with this Term Sheet. Upon the Parties decision to proceed forward with respect to consummating a transaction as contemplated herein and except as otherwise |

|  |  |
|---|---|
|  | agreed to in the definitive agreements, ICP shall be responsible for the out-of-pocket fees and expenses of the Parties in connection with the consummation of the transactions contemplated herein, including any due diligence expenses, legal fees and other related costs incurred by each Party; provided that all such fees and expenses are approved by ICP and that the Receiving Party shall not be entitled to incur any fees or expenses on behalf of ICP or the JV Vehicle unless approved in advance and in writing by ICP. |
| **Exclusivity:** | In addition to the Receiving Parties' obligations under Section VII of the NDA, during the Exclusivity Period (as defined below), the Receiving Parties agree not to, and to cause their agents, representatives, affiliates and other persons acting on their behalf (collectively, the "**Restricted Persons**"), not to, directly or indirectly, (i) solicit offers, inquiries or proposals for, or entertain any offer, inquiry or proposal to enter into, a transaction with any person or entity similar to the transactions contemplated herein, whether or not any such transaction is structured in a manner that is comparable or similar to those contemplated herein (a "**Competing Transaction**"), or (ii) conduct any discussions or negotiations, or enter into any agreement, arrangement or understanding, regarding a Competing Transaction. In addition, the Receiving Parties agree to promptly notify ICP, in writing, if the Receiving Parties (or any their agents representatives, affiliates and other persons acting on any of their behalf) receives any such offer, inquiry or proposal regarding a Competing Transaction (regardless of whether the Receiving Parties desire to engage in such Competing Transaction).<br><br>The "Exclusivity Period" shall commence upon the execution of this Term Sheet and continue until the earliest to occur of the following: (i) 60 days following execution and delivery of this Term Sheet (subject to a one-time extension of an additional 60 days, exercisable in writing by the Disclosing Party in its sole discretion); or (ii) the Parties' mutual agreement to terminate this Term Sheet. |
| **Enforceability:** | The Parties agree that while this Term Sheet is neither intended to contain all matters upon which agreement must be reached by the Parties to consummate the transactions contemplated hereunder nor, except as set forth herein, is it meant to be a commitment of any kind by the Parties to engage in a transaction or to otherwise be obligated to any of the persons mentioned herein in any way, if a transaction is to be subsequently completed among the Parties |

|  |  |
|---|---|
|  | regarding the Business Opportunity, the terms herein shall form the basis for such transaction and accordingly, shall be legally binding on the Parties. |
| Miscellaneous: | This Term Sheet, together with the NDA the terms of which are hereby incorporated by reference, (i) contains the entire agreement between the parties hereto and supersedes any and all prior agreements, arrangements and understandings (written or oral) relating to the matters provided for herein, (ii) may not be amended, modified or supplemented, and waivers or consents to departure from the provisions hereof may not be given, except by written instrument duly executed by both Parties, (iii) may be executed in one or more counterparts, each of which when executed shall be deemed to be an original, but all of which shall constitute but one and the same agreement (facsimile or PDF signatures shall be deemed original and binding signatures), and (iv) may not be assigned by any Party without the prior written consent of the other Parties. This Term Sheet may not be assigned by any of the Receiving Parties without the written consent of ICP which may be withheld in its sole discretion; provided, however if such consent is granted, this Term Sheet shall be binding upon and inure to the benefit of any such successors and assigns. |

This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to its rules regarding conflicts of laws, and each party consents to the jurisdiction of the courts in the State of New York.

In addition, the Parties hereby irrevocably and unconditionally waive our rights to trial by jury in any dispute, action, suit or proceeding arising out of or relating to this Term Sheet or the transactions contemplated hereunder (including any counteraction or counterclaim).

[SIGNATURE PAGE FOLLOWS]

AGREED as of [ August 24, 2017 ]:

_____
Innovatus Capital Partners, LLC

By: _Joshua Little_____

Title: _Managing Director___

_____
Ritz Advisors, LLC

By: _Jonathan Neuman_____

Title: _CEO_____

_____
Jonathan Neuman, individually

_____
Anthony Mitchell, individually

Confidential – For Discussion Purposes Only

4